782 F.2d 1041
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CONSOLIDATED RAIL CORPORATION, Plaintiff-Appellee, Cross-Appellant,
v.
NATIONAL AERONAUTICS AND SPACE ADMINISTRATION; UNITED STATES
CUSTOMS SERVICE, Defendants-Appellants, Cross-Appellees,
JAMES M. BEGGS, et al., Defendants,
FERROCARRILES NACIONALES de MEXICO, Defendant-Appellee,
Cross-Appellant.
 84-3491, 84-3537, 84-3629
 United States Court of Appeals, Sixth Circuit.
 12/2/85
 
 BEFORE: KRUPANSKY and MILBURN, Circuit Judges; and JOINER, Senior District Judge.[1]
 PER CURIAM.
 
 
 1
 Appellants-Cross-Appellees National Aeronautics and Space Administration ('NASA') and United States Customs Service ('Customs') appeal and Appellees-Cross-Appellant Consolidated Rail Corporation ('Conrail') and Ferrocarriles Nacionales de Mexico ('FNdeM') cross-appeal from a judgment of the district court setting aside the sale of 25 flat cars to NASA and finding FNdeM liable to Conrail for storage charges in the amount of $67,500.00.
 
 
 2
 In the spring of 1981, FNdeM, the Mexican National Railway, ordered and purchased 25 rail cars from an American rail car broker. After the cars had been shipped to FNdeM in Mexico City, FNdeM rejected the cars as used and returned them to the United States. The cars were shipped as 'In-Bond' freight to be delivered to the District Director of Customs in Cincinnati. Customs placed the cars in Constructive General Order and requested that Conrail, as final carrier, store the flatcars until their release.
 
 
 3
 Under the applicable tariff, daily storage charges were to accrue at the rate of $30.00 per car after notice had been mailed or given to FNdeM. By stipulation of the parties, it was established that Conrail had noticed FNdeM that the flatcars were being held for its account subject to the tariff charges. The stipulation did not, however, state the date notice had been given to FNdeM.
 
 
 4
 In April of 1982, Conrail filed notice of its lien for freight and storage charges in the amount of $169,555.91 and advised Customs that it no longer desired to store the cars pursuant to the Constructive General Order. Customs subsequently requested that Conrail continue to store the cars until a sale was accomplished. Shortly thereafter, Customs mailed written notice to all interested parties informing them that it intended to sell the cars at auction. Conrail twice requested postponement of the auction because of ongoing negotiations with FNdeM.
 
 
 5
 By letter dated October 4, 1982, Conrail requested that Customs proceed with the auction. On November 24, 1982, Customs informed all interested parties, including Conrail and FNdeM, that it would conduct an auction of the flatcars on December 3, 1982. Included in Customs' notice was a copy of the 'Cincinnati Port Pipeline' stating that the cars had a domestic value of between $1,205,631 and $1,435,275 and that the minimum bid at the auction would be $225,000. No bids were submitted at the December 3, 1982 auction.
 
 
 6
 Later that month, NASA became aware of the availability of the flat cars. NASA contacted Customs to express its interest in acquiring the cars. After exploring the possibility of an inter-agency transfer, Customs determined that no such transfer was authorized. On February 9, 1983, Customs mailed written notice to all interested parties that a public auction of the cars would be conducted on February 17, 1983. Enclosed as an attachment to the February 9 notice was a copy of the November 24, 1982 'Cincinnati Port Pipeline' which, as noted above, provided for a minimum bid of $225,000.
 
 
 7
 On February 15, 1983, Hilton Duckworth, the Port Director of Customs informed NASA official David Hoffman that Customs had received several inquiries about the cars. At that time, NASA increased bidding authority on the cars from $32,000 to $77,000. Duckworth advised Hoffman that there would be no minimum bid at the February auction. Hoffman further testified that he had an understanding with Duckworth that NASA could obtain the cars by bidding $100.00 if there were no other bids. During the relevant time period, Customs did not make any oral representations to Conrail about minimum bid requirements at the February auction.
 
 
 8
 On February 16, 1983, the day before the scheduled auction, representatives of FNdeM informed Customs that FNdeM and Conrail had reached an agreement with respect to the cars, the FNdeM desired to make entry on the cars, and that Conrail would issue to Customs a release of its lien. Customs directed FNdeM that if it received a satisfaction of lien from Conrail and entry papers from FNdeM prior to the auction, the auction would be cancelled.
 
 
 9
 However, FNdeM could not secure the required bond before the the scheduled sale. FNdeM requested that Customs cancel or postpone the auction in order to permit FNdeM to secure the appropriate bond. Customs denied the request. No Conrail representatives appeared at the February 17 auction. NASA submitted the only bid in the amount of $100.00.
 
 
 10
 Conrail initiated this action for declaratory and injunctive relief to set aside the sale of the cars to NASA and to declare as valid Conrail's lien on the cars. Conrail also petitioned, by way of interpleader, for a determination of the various rights and interests of the parties in the cars.
 
 
 11
 The district court set aside the auction for three reasons. First, the court found evidence that Customs attempted to benefit another governmental agency, NASA, at the expense of Conrail and FNdeM. Second, the court found that the Cincinnati Port Pipeline attachment to the February 9, 1983 notice of sale made that notice ambiguous as to the minimum bid requirement. Third, the court found the consideration paid for the cars to be grossly inadequate.
 
 
 12
 The district court also determined that Conrail's recovery for storage charges should be limited to a reasonable period of time. Accordingly, the court awarded storage charges to Conrail in the amount of $67,500.00, representing charges accruing during a 90-day period.
 
 
 13
 Upon consideration of the briefs and record herein and after oral argument, the judgment of the district court is AFFIRMED for the reasons stated in the district court's opinion.
 
 
 
 [1]
 United States Senior District Judge from the Eastern District of Michigan, sitting by designation